IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| **ROLANDO RENTERIA-CAMACHO,**  )<br>)<br>**Plaintiff,**  )<br>)<br>v.  )<br>)<br>**DIRECTV, INC. and**  )<br>**DIRECTV, LLC,**  )<br>)<br>**Defendants.**  )<br>  ) | **CIVIL ACTION**<br><br>**No. 14-2529-CM** |

## MEMORANDUM AND ORDER

Plaintiff Rolando Renteria-Camacho brings suit against defendants DirecTV, Inc. and DirecTV, LLC (collectively "DirecTV" or "defendant"),[1] alleging violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.* Plaintiff's claim arises from his work as a technician from March 2009 to July 2011. Defendant hires subcontractors, which it calls "Home Service Providers." In this case, a Home Service Provider hired its own subcontractors, one of which then hired plaintiff. DirecTV later acquired the Home Service Provider, and plaintiff alleges that DirecTV is liable for overtime pay as his employer under the FLSA. Defendant's Motion to Compel Plaintiff's Claims to Arbitration and Stay the Case Pending Resolution of the Arbitration (Doc. 34) is before the court.

**I.   Background**

From March 2009 to July 2011, plaintiff worked as a technician installing and servicing DirecTV equipment for subcontractors of DirecTV. During that time, he received an IRS Form 1099 for income tax reporting purposes. In July 2011, plaintiff began working as a W-2 employee for

---

[1] Defendants note that, as of January 1, 2012, DirecTV, Inc. merged into DirecTV, LLC, and therefore there is only one defendant to this action, DirecTV, LLC. (Doc. 20 at 2 n.1.)

DirecTV. On July 18, 2011, as a condition of his employment, plaintiff signed a Mutual Agreement to Arbitrate Claims.[2]  (Doc. 34-1 at 2 ¶ 6, 4.)  DirecTV "requires that technicians who are DirecTV W-2 employees enter into the DirecTV Mutual Agreement to Arbitrate Claims as a term and condition of their employment."  (*Id.* at 2 ¶ 5.)

### A. *Lang, et al. v. DirecTV, et al.*

On December 30, 2011, the United States District Court for the Eastern District of Louisiana conditionally certified a class under the FLSA in a lawsuit against defendants in *Lang, et al. v. DirecTV, et al.* ("*Lang*"), No. 10-1085-NJB.  The conditionally certified class was as follows:

> All persons who at any time from February 22, 2008, through the [date of preliminary approval] (the "Collective Action Period") engaged in the installation, service and/or upgrading of satellite equipment systems at DirecTV customer sites in the contiguous United States who were compensated on a piece-rate basis as an alleged independent contractor.

(Doc. 126-3 at 20 (*Lang*).)  On August 29, 2012, plaintiff signed a "Consent to Become a Party Plaintiff" in *Lang*.  (Doc. 326-1 (*Lang*); Doc. 1 at 12 ¶ 56.)  Plaintiff's name on the form under the signature line was typed as "Rolando Renteria Camacho," without a hyphen.  (Doc. 326-1 (*Lang*).)  On September 12, 2012, plaintiffs' counsel filed plaintiff's "Consent to Become a Party Plaintiff" and filed a "Notice of Filing Consents to Join."  (Docs. 326 and 326-1 (*Lang*).)  On the Notice of Filing Consents to Join, plaintiff's counsel listed plaintiff as "Rolando Camacho."[3]  (Doc. 326 (*Lang*).)

---

[2] Plaintiff printed and signed his name as "Rolando Renteria." (*See* Doc. 34-1 at 4.) Jennifer Tate, Senior Human Resources Manager for DirecTV, signed a declaration that states that "DIRECTV's records reflect that **Ronaldo** Renteria-Camacho executed DirecTV's Arbitration Agreement on July 18, 2011." (Doc. 34-1 at 2 ¶ 6 (emphasis added).) "**Ronaldo** Renteria-Camacho" appears to be a misspelling. Defendant also consistently misspells plaintiff's first name as "Ronaldo" instead of "Rolando" in the case captions. (*Compare* Complaint (Doc. 1) (listing "Rolando Renteria-Camacho" as plaintiff), *with* DirecTV's Motion to Compel Plaintiff's Claims to Arbitration and Stay the Case Pending Resolution of the Arbitration (Doc. 34) (listing "Ronaldo Renteria-Camacho" as plaintiff).)

[3] Plaintiff printed his own name as Rolando Renteria on the arbitration agreement, plaintiff's counsel generally refers to him as Rolando Renteria-Camacho, and defendant continually refers to him as Ronaldo Renteria-Camacho.

Sometime between February 25 and April 29, 2013, plaintiff returned to defendants a discovery questionnaire.[4] (*See* Doc. 408 (*Lang*); Doc. 39-2 at 1 ¶ 2.) In the questionnaire, plaintiff listed his name as "Rolando Adolfo Renteria - Camacho." (Doc. 39-1 ¶ 1.) The questionnaire asked plaintiff to list every job he held from January 1, 2005, to the present. (*Id.* ¶ 13.) The first entity plaintiff listed was DirecTV, which he stated employed him as a technician from July 2011 to the present. (*Id.*) The questionnaire asked whether plaintiff received a 1099 or a W-2, and plaintiff responded that he received a W-2. (*Id.*) The questionnaire asked whether plaintiff signed an employment agreement, but plaintiff did not answer that question. (*Id.*) Plaintiff attached a verification page, signing in a space marked for "Rolando Camacho."

On August 5, 2013, defendants filed a motion for summary judgment. (Doc. 448 (*Lang*).) On August 7, 2013, defendants filed a motion to decertify the class with prejudice. (Doc. 451 (*Lang*).) On August 27, 2013, plaintiffs, including plaintiff here, filed a memorandum in opposition to defendants' motion to decertify the class. (Doc. 463 (*Lang*).) On August 28, 2013, plaintiffs, including plaintiff here, filed a response memorandum in opposition to defendants' motion for summary judgment. (Doc. 464 (*Lang*).) On August 30, 2013, the parties filed a joint motion to decertify the class. (Doc. 466 (*Lang*).) On September 3, 2013, the court granted the parties' joint motion decertifying the class and allowed defendants to withdraw their motion for summary judgment and motion to decertify. (Doc. 467 (*Lang*).) In granting the parties' joint motion to decertify the class, the court dismissed the opt-in plaintiffs' claims without prejudice to allow them to pursue their individual claims and ordered the statute of limitations for each opt-in plaintiff to continue to be tolled for sixty days from the date of the order. (Doc. 1 at 12 ¶ 56.)

---

[4] Defendant does not dispute that it received service of plaintiff's discovery questionnaire.

### B. *Acfalle, et al., v. DirecTV*

On November 1, 2013, within the tolling period granted by the *Lang* court, plaintiff here joined with more than 200 others in filing an action in the Central District of California, *Acfalle v. DirecTV*, No. 13-8108 ("*Acfalle*"). (Doc. 1 at 12 ¶ 57.) Plaintiff was listed on the complaint as "Rolando Renteria-Camacho." (Doc. 1 (*Acfalle*).) The complaint alleges that plaintiff worked as a contractor between March 2009 and July 2011 and was unlawfully deprived of overtime compensation; it never mentions that plaintiff currently worked for DirecTV as a technician receiving a W-2. (*See id.* at 108 ¶¶ 601–03 (*Acfalle*).) The complaint also alleges that most plaintiffs, including plaintiff here, had opted into the *Lang* litigation. (*See id.* at 19 ¶ 45 (*Acfalle*).)

On April 28, 2014, defendants in *Acfalle*, including defendant here, filed motions to (1) sever the plaintiffs' claims, (2) sever the defendants, and (3) transfer the case. (Docs. 46, 47, and 48 (*Acfalle*).) Plaintiffs in that case, including plaintiff here, opposed those motions. (Docs. 57 and 58 (*Acfalle*).) Defendants filed replies in support of their motions. (Docs. 62, 63, and 64 (*Acfalle*).) On July 22, 2014, the court granted in part and denied in part defendants' motion to sever the plaintiffs' claims and dismissed plaintiff here without prejudice to refile his FLSA-only claims in his home state or a neighboring state within ninety days. (Doc. 71 (*Acfalle*).)

### C. The Present Case

On October 20, 2014, plaintiff filed his complaint in this court. The complaint addresses allegations regarding the time between approximately March 2009 and July 2011 when he worked as a contractor. (Doc. 1 at 12 ¶¶ 58, 59.) The complaint never mentions that plaintiff was at that time a

W-2 employee of DirecTV. However, the complaint does state that plaintiff had opted into the litigation in *Lang* and was a plaintiff in *Acfalle*.[5]

Defendant filed a motion to dismiss, to which plaintiff filed a response and defendant filed a reply. (Docs. 11, 18, and 20.) The court denied the motion to dismiss. (Doc. 23.) The parties participated in a planning conference, exchanged initial disclosures, and participated in a scheduling conference. (Docs. 17 and 24.) On April 6, 2015, Magistrate Judge James P. O'Hara entered an agreed protective order. (Doc. 28.) Defendant filed an answer. (Doc. 30.) Then, defendant filed the present motion to compel arbitration. (Doc. 34.)

Plaintiff's counsel provides a declaration stating that DirecTV's counsel never mentioned that plaintiff was subject to an arbitration agreement in *Lang* or *Acfalle*. (Doc. 39-2, at 1 ¶ 3.) He also states that, "[w]hile defense counsel had previously indicated that Plaintiff might have an arbitration agreement, such an agreement was not produced until April 22, 2015." (Doc. 39-2, at 2 ¶ 2.) Plaintiff's counsel did not state how long before April 22, 2015, defense counsel had indicated plaintiff might have had an arbitration agreement.

**II.   Discussion**

Plaintiff argues that defendant has waived its right to enforce the arbitration agreement.[6] The right to arbitrate a claim can be waived, just as any other contractual right. *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1489 (10th Cir. 1994). Whether a party waived the right to arbitrate depends on the specific facts of the case. *Reid Burton Constr., Inc. v. Carpenters Dist.*

---

[5] On January 15, 2015, plaintiff electronically submitted a consent to join a collective action of DirecTV W-2 technicians then pending before the American Arbitration Association in Atlanta, Georgia styled *Arndt, et al. v. DirecTV*, Case No. 30-160-00624-11 (AAA, Atlanta, GA) to pursue his post-July 2011 claims that were not pleaded in this case. (Doc. 39 at 3 ¶ 12.) The court does not believe this is relevant to the issues before it now.

[6] Plaintiff does not dispute the validity of the arbitration agreement or whether it would, absent waiver, govern the claims in this lawsuit.

*Council of S. Colo.*, 614 F.2d 698, 702 (10th Cir. 1980).  The court must resolve any doubts regarding whether there is waiver in favor of arbitration.  *See In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1116 (10th Cir. 2015) (citing and quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983), *Nat'l Am. Ins. Co. v. SCOP Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004)).  In determining whether a party has waived the right to arbitrate, the court examines the following: (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place;" and (6) whether the delay "affected, misled, or prejudiced" the opposing party.  *Id.* (quoting *Peterson v. Shearson/Am. Express*, 849 F.2d 464, 467–68 (10th Cir. 1988)).  This list is not exclusive, nor is applying the factors a "mechanical process in which each factor is assessed and the side with the greater number of favorable factors prevails."  *See Hill v. Ricoh Ams. Corp.*, 602 F.3d 766, 773 (10th Cir. 2010).

   Here, factors (1) and (2) strongly favor finding waiver.  In response to the discovery questionnaire, plaintiff stated that he currently worked for DirecTV as a technician and that he received a W-2.  DirecTV requires every W-2 employee to sign an arbitration agreement as a condition of their employment.  Therefore, at least from the time plaintiff provided his answers to the discovery questionnaire in *Lang*, defendant knew or should have known it had an arbitration agreement with plaintiff because it knew plaintiff was a W-2 employee.  Instead of requesting arbitration, defendant

moved for summary judgment and moved to decertify the class. Plaintiffs in *Lang*, including plaintiff here, responded to the motion for summary judgment and the motion to decertify the class. The parties then jointly moved to decertify the class without prejudice to allow the plaintiffs to refile their claims. Plaintiff refiled his claim in *Acfalle*. Instead of requesting arbitration, defendant moved to (1) sever the plaintiffs' claims, (2) sever the defendants' claims, and (3) transfer the case. After the court granted in part the motion to sever the plaintiffs' claims, plaintiff refiled his claim here. Instead of requesting arbitration, defendant filed a motion to dismiss. Only after the court denied the motion to dismiss, and the parties participated in a planning conference, exchanged initial disclosures, and participated in a scheduling conference, did defendant request arbitration. These actions—after receiving plaintiff's discovery response that put defendant on express notice that an arbitration agreement was applicable—are inconsistent with the right to arbitrate and instead demonstrate an intent to litigate. The facts here also support a conclusion that the litigation machinery has been substantially invoked. Not only did defendant file a motion for summary judgment, but defendant then filed motions that prompted (1) plaintiff's claim to be dismissed in *Lang*, (2) plaintiff's refiling his claim in *Acfalle*, (3) plaintiff's claim to be dismissed in *Acfalle*, and (4) plaintiff's refiling his claim here. *See Hill*, 603 F.3d at 773–74 (discussing cases in which courts held that filing motions to dismiss and for summary judgment was inconsistent with enforcing the right to arbitrate).

      The court does not find pertinent that the *Lang* court did not rule on the motion for summary judgment. At the very least, defendant's act of filing the motion for summary judgment is inconsistent with its right to arbitrate, even if that particular action did not fully invoke the litigation machinery by requiring the court's ruling. Presumably defendant expected the court to rule on it at the time it filed the motion. That the parties later agreed to jointly decertify the class is not meaningful to this analysis.

Regarding factors (3) and (6), although plaintiff's claims in front of this court have not reached an advanced stage, that this is the third time plaintiff's claim has been before a court weighs in favor of a finding of prejudice to plaintiff from defendant's failure to request arbitration earlier. Factor (4) does not apply here, and factor (5) does not weigh in favor of finding waiver. On balance, analysis of the factors leads the court to a finding that defendant waived its right to enforce arbitration.

Defendant states that it did not know about the arbitration agreement until preparing its answer in this case. The Tenth Circuit has explicitly rejected the proposition that waiver in the context of arbitration contracts is limited to "the narrow sense of waiver typically used in the criminal-law context, where a waiver is an intentional relinquishment or abandonment of a known right." *In re Cox Enterprises*, 790 F.3d at 1119 (rejecting defendant's argument that there was no waiver of a known right to arbitrate because defendant's right to arbitrate against the class members could not have become known until the class was certified); *Reid Burton Const.*, 614 F.2d at 701, 703 (affirming district court's determination of waiver even though the district court stated it "may have been largely inadvertent rather than intentional"). Furthermore, the court is not persuaded that defendant did not have at least constructive knowledge that plaintiff had an arbitration agreement here—plaintiff explicitly wrote in his discovery questionnaire (returned *before* defendant filed its motion for summary judgment) that he then currently worked at DirecTV as a W-2 employee. Because DirecTV requires every W-2 employee to enter into an arbitration agreement, and because the arbitration agreement is broad enough to cover claims arising out of past work when he received a form 1099, defendant was on notice then that plaintiff had signed an arbitration agreement.

Defendant suggests that it was not on notice then because plaintiff's notice of intent to join the class action reflected a different name than that which he used to sign his employment agreement and that he signed on the declaration accompanying his discovery responses. But in *Lang*, at least one

-8-

plaintiff indicated that he was a current W-2 employee.  This fact supports a finding of waiver based on defendant's choice to move for summary judgment.  The fact that plaintiff refiled his claims in *Acfalle* and here—and defendant still did not move to compel arbitration—bolsters this finding of waiver.[7]

The court finds that plaintiff has met his burden to show that defendant waived its right to arbitrate plaintiff's claims.

**IT IS THEREFORE ORDERED** that DirecTV's Motion to Compel Plaintiff's Claims to Arbitration and Stay the Case Pending Resolution of the Arbitration (Doc. 34) is DENIED.

Dated this 30th day of March, 2016 at Kansas City, Kansas.

  s/ Carlos Murguia          
**CARLOS MURGUIA**
**United States District Judge**

---

[7] The court does not believe it is relevant that plaintiff did not note in this complaint or the *Acfalle* complaint that he was a current W-2 employee for DirecTV.  Plaintiff was not under any obligation to do so when his claims did not involve his present employment.