UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROLANDO RENTERIA-CAMACHO,

               Plaintiff,

v.                                                Case No. 14-2529-CM

DIRECTV, INC. and DIRECTV, LLC,

               Defendants.

## **ORDER**

The plaintiff, Rolando Renteria-Camacho, brings suit against defendants DIRECTV, Inc. and DIRECTV, LLC (collectively, "DIRECTV"),[1] alleging violations of the Fair Labor Standards Act ("FLSA") arising out of plaintiff's work installing DIRECTV satellite systems through DIRECTV subcontractors Speedy Communications ("Speedy") and Quest Integrated Systems, Inc. ("Quest"). Alleging that plaintiff has intentionally destroyed documents directly related to his claims in this suit, DIRECTV has filed a motion for the imposition of sanctions seeking an adverse inference instruction (ECF No. 66). For the reasons set forth below, the motion is denied.

**Background**

On September 5, 2012, plaintiff filed his consent to opt in to a conditionally certified FLSA action pending in the Eastern District of Louisiana, styled *Lang v.*

---

[1] Effective January 1, 2012, DIRECTV, Inc. merged into DIRECTV, LLC and out of existence. Accordingly, although plaintiff has named two defendants, only one, DIRECTV, LLC, currently exists.

1

*DIRECTV, et al.*, No. 10-1085-NJB.  Plaintiff's claim in *Lang* was dismissed without prejudice to refiling within a certain period of time.  On November 1, 2013, within the time period designated by the *Lang* court, plaintiff refiled his claim in the Central District of California in a matter captioned *Acfalle, et al. v. DIRECTV*, No. 13-8108.  The *Acfalle* court similarly dismissed plaintiff's claim without prejudice, and on October 20, 2014, plaintiff filed the instant action.

DIRECTV alleges that at plaintiff's deposition in this matter, plaintiff admitted he intentionally shredded any documents he had related to his work for DIRECTV during the time period when he was engaged by Speedy and Quest.  According to DIRECTV, plaintiff testified the documents he shredded included "'dailies' and 'weeklies,' which were documents that '[b]asically just track[ed] about everything [he did] daily,'" or forms that kept track of his work throughout the week.[2]  Claiming it has been prejudiced by the destruction of these documents, DIRECTV seeks an adverse inference instruction. Opposing DIRECTV's motion, plaintiff disputes only the timing of the shredding.[3] Although DIRECTV claims plaintiff shredded the documents at issue in 2014, two years

---

[2] ECF No. 67 at 3 (quoting ECF No. 67-1, Renteria-Camacho Dep. 250:3–9) (modification by DIRECTV).

[3] To the extent plaintiff also asserts DIRECTV has failed to satisfy the meet-and-confer requirement of D. Kan. Rule 37.2, given the procedural posture of this case and the parties' respective positions, the court declines to deny DIRECTV's motion on this basis and instead decides the motion on the merits.

after joining the *Lang* lawsuit, plaintiff claims he actually shredded the documents in 2011, "long before he ever learned of or opted into a lawsuit against DIRECTV."[4]

**Analysis**

"Spoliation sanctions are proper when '(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence.'"[5] An adverse-inference jury instruction may be an appropriate sanction for spoliation of evidence.[6] But to warrant such an instruction, "a party must submit evidence of intentional destruction or bad faith."[7]

As indicated above, the parties dispute only the timing of plaintiff's shredding of documents. DIRECTV argues that plaintiff's deposition testimony unambiguously provides that plaintiff shredded the documents in 2014. DIRECT relies on the following excerpt:

> Q: Where did you keep your documents before you shredded them?
> A: Home.
> Q: Where at home?
> A: Office.

---

[4] ECF No. 76 at 2.

[5] *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007)).

[6] *See Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1219–20 (10th Cir. 2008).

[7] *Moreno v. Taos Cnty. Bd. of Com'rs*, 587 Fed. App'x 442, 444 (10th Cir. 2014) (citing *Henning*, 530 F.3d at 1220; *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997)).

> Q: What kind of documents did you have that you shredded?
> A: Dailies, weeklies.
> Q: What are dailies and weeklies?
> A: Basically just track about everything I do daily and it's a form that we fill out that keeps track of all your work throughout the week.
> Q: Okay. What other types of documents did you shred?
> A: I don't remember.
> Q: Okay. **What year did you shred[] the documents?**
> A: **2014.**
> Q: **What month was it in 2014?**
> A: **I don't remember.**
> Q: **And you joined the *Lang* lawsuit in 2012; right?**
> A: **Yes.**[8]

Plaintiff argues the testimony cited by DIRECTV is "directly contradicted by [p]laintiff's earlier and subsequent deposition testimony, his deposition testimony corrected through an errata sheet, and [p]laintiff's [d]eclaration submitted with [plaintiff's memorandum in opposition to DIRECTV's motion for sanctions]."[9] Additionally, plaintiff notes that the testimony on which DIRECTV relies was given toward the end of plaintiff's eight-hour deposition, and that the deposition was conducted in English, plaintiff's second language.

Plaintiff cites the below testimony, given "[t]oward the beginning" of his deposition:

> Q: So what did you do with the document relating to your work with DirectSat? What happened to them?
> A: You mean like all my dailies and special and all that stuff.

---

[8] ECF No. 79 at 3–4 (quoting ECF No. 67-1, Renteria-Camacho Dep. 249:22–250:20) (emphasis and modification by DIRECTV).

[9] ECF No. 76 at 2.

| | |
|---|---|
| Q: | Any documents you have related to the time you worked with DirectSat? |
| A: | **I pretty much shredded them because I didn't know I was going to be into this.** |
| Q: | When did you shred them? |
| A: | **It was a year after I found out about the lawsuit. Before – wait a minute. Hold on.** |
| Q: | Why did you decide to shred your documents? |
| A: | **Because I didn't think I needed it.**[10] |

Plaintiff also cites the following testimony, given "toward the end" of his deposition, but before the testimony cited by DIRECTV:

| | |
|---|---|
| Q: | So sir, you were served with a number of document requests, and in response to those requests, you've produced exactly zero documents. Is it your testimony today that you don't have any documents related to your work on DIRECTTV? |
| A: | I didn't have no way to prove because I got rid of – **I shredded all my paperwork, and then after I shredded them, a year later, I found out about this.**[11] |

Finally, plaintiff cites the deposition testimony surrounding the excerpt relied on by DIRECTV:

| | |
|---|---|
| Q: | So is it fair to say that you don't have any documents that support your claims in this lawsuit? |
| A: | I don't have any paperworks. |
| Q: | Was that a yes? |
| A: | Yes. |
| Q: | **Why did you decide to shred your documents?** |
| MS. COOK: | Object to form. Asked and answered. |

---

[10] ECF No. 76 at 3–4 (quoting ECF No. 76-2, Renteria-Camacho Dep. 18:15–19:4 (emphasis added by plaintiff).

[11] *Id.* at 4 (quoting ECF No. 76-2, Renteria-Camacho Dep. 246:16–246:23) (emphasis added by plaintiff).

| | |
|---|---|
| A: | **Because I didn't think I was going to need them.** |
| Q: | (By Ms. Martin) Where did you keep your documents before you shredded them? |
| A: | Home. |
| Q: | Where at home? |
| A: | Office. |
| Q: | What kind of documents did you have that you shredded? |
| A: | Dailies, weeklies. |
| Q: | What are dailies and weeklies? |
| A: | Basically just track about everything that I do daily and it's a form that we fill out that keeps track of all your work throughout the week. |
| Q: | Okay. What other types of documents did you shred? |
| A: | I don't remember. |
| Q: | **Okay. What year did you shredded [sic] the documents?** |
| A: | **2014.** |
| Q: | **What month was it in 2014?** |
| A: | **I don't remember.** |
| Q: | **And you joined the Lang lawsuit in 2012; right?** |
| A: | **Yes.** |
| Q: | **Okay. And so you shredded documents related to your work for DIRECTTV [sic] after you joined the Lang lawsuit?** |
| A: | **Okay. So W-2, is that what you're talking about?** |
| Q: | **You told me that in 2014 you shredded all the documents you had.** |
| A: | **I don't know what year it was. I don't remember. I'm sorry.**[12] |

Even disregarding plaintiff's errata sheet and declaration, as DIRECTV urges, the court cannot find, on this record, that plaintiff had a duty to preserve the documents at issue when he shredded them or that plaintiff acted in bad faith. The court does not find the testimony with respect to the year in which the documents were shredded to be as "unambiguous" as DIRECTV claims, especially under the circumstances here, with the deposition conducted in plaintiff's second language. On this point, the court observes,

---

[12] *Id.* at 4–5 (quoting ECF No. 76-2, Renteria-Camacho Dep. 249:11–251:5) (emphasis and modification by plaintiff).

with no disrespect to defense counsel, that the record is a bit muddled.  Of course, should defense counsel disagree, they're still free to pursue the point by cross-examining plaintiff at trial – tactfully, though, that might amount to firing a gun with "blank" ammunition.

As the Tenth Circuit has observed, "[a]n adverse inference is a powerful sanction as it 'brands one party as a bad actor' and 'necessarily opens the door to a certain degree of speculation by the jury, which is admonished that it may infer the presence of damaging information in the unknown contents of [destroyed evidence].'"[13]  The record simply doesn't support such a sanction.  Therefore, defendant's motion is denied.

IT IS SO ORDERED.

Dated January 18, 2017, at Kansas City, Kansas.

   s/ James P. O'Hara
James P. O'Hara
U.S. Magistrate Judge

---

[13] *Henning*, 530 F.3d at 1219–20 (quoting *Morris v. Union Pac. R.R.*, 373 F.3d 896, 900–01 (8th Cir. 2004)).